# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PABLO PATTERSON,<br><br>        Plaintiff,<br><br>    v.<br><br>WARDEN AND HOUSING SUPERVISOR, et al.,<br><br>        Defendants. | Case No.  1:12-cv-01948-LJO-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. 43)**<br><br>**OBJECTIONS DUE WITHIN 30 DAYS** |

**I.**     **Procedural History**

Plaintiff, James Pablo Patterson, is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983 on his claims in the Second Amended Complaint for deliberate indifference to his safety under the Eighth Amendment against Defendants Warden C. Lawless, Sergeant Finegan, and Correctional Officers S. Corona and R. Borbon ("Defendants").  (*See* Docs. 19, 21, 22.)

On May 9, 2014, Defendants filed a motion for summary judgment arguing that Plaintiff failed to administratively exhaust his claims against them as required by the Prison Litigation Reform Act ("PRLA").  (Doc. 43.)  Plaintiff filed an opposition[1] (Docs. 46-48)[2] to which

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order issued on May 20, 2014.  *Woods v. Carey*, Nos. 09-15548, 09-16113, 2012 WL 262 6912 (9th Cir.

1

Defendants replied (Doc. 50).[3] The motion is deemed submitted. Local Rule 230(l).

Having read and considered the pleadings and for the reasons set forth below, the Court recommends Defendants' motion for summary judgment be denied.

## II.     Summary Judgment Standard

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) *cert denied*, 540 U.S. 810, 124 S.Ct. 50 (2003). On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling *Wyatt* with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). *Albino v. Baca*, 747 F.3d 1162, 1168-69 (9th Cir. 2014) (en banc). Following the decision in *Albino*, Defendants may raise exhaustion deficiencies as an affirmative defense under §1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[4] or (2) a motion for summary judgment under Rule 56 if it has been pled and preserved. *Id*. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Any party may move for summary judgment. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

---

Jul. 6, 2012); *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003); *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

[2] Plaintiff filed a second opposition on June 6, 2014. (Doc. 52.) Upon review and comparison, Plaintiff's second opposition (Doc. 52) is a duplicate of his first (Doc. 46), aside from one page. Page 22 of Doc. 52 appears to be the third page of Plaintiff's declaration which is found in Exhibit 1A of Doc. 46 and it appears it should be inserted between pages 21 and 22 of Doc. 46. Plaintiff's intent in filing Doc. 52 is neither explained, nor evident. Despite this, due to the leniencies to be accorded to a pro se inmate plaintiff, page 22 of Doc. 52 will be considered as inserted between pages 21 and 22 of Doc. 46.

[3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[4] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." *Albino*, 2014 WL 1317141, at *1.

whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Unlike a motion for summary judgment on the merits of a plaintiff's claim(s) where a defendant does not bear the burden of proof at trial and in moving for summary judgment, whether the PLRA exhaustion standard has been met is an affirmative defense. *Wyatt*, 315 F.3d at 1119. Thus, "defendants have the burden of raising and proving the absence of exhaustion." *Id*. "[T]here can be no 'absence of exhaustion' unless some relief remains 'available,' a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) *ref. Brown v. Croak*, 312 F.3d 109, 112 (3d Cir.2002) (holding that because failure to exhaust is an affirmative defense under the PLRA, a complaint cannot be dismissed where the prisoner submits evidence showing, and the defendants do not disprove, that no remedy was "available"). Relevant evidence includes "statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case, such as in the response memoranda in these cases. With regard to the latter category of evidence, information provided the prisoner is pertinent because it informs [a] determination of whether relief was, as a practical matter, 'available.'" *Id.*, at 937.

If Defendants meet this initial burden, the burden then shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino,* 747 F.3d at

1172, citing *Hilao v. Estate of* Marcos, 103 F.3d 767, 778 (9th Cir. 1996) ("[T]he burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.")  Plaintiff must meet this burden by showing ". . . more than the mere existence of a scintilla of evidence." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).  "However, as required by *Jones*, the ultimate burden of proof remains with the defendant." *Albino*, 747 F.3d at 1172.

In judging the evidence at the summary judgment stage, the Court must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue for trial and, in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.    Exhaustion of Administrative Remedies Standards

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).

Compliance with mandatory exhaustion requires prisoners to adhere to the deadlines and other critical procedural rules, *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378 (2006), and the exhaustion requirement may not be satisfied by filing an untimely or otherwise procedurally

...

defective appeal, *Woodford*, 548 U.S. at 83-84 (quotations omitted). However, the failure to exhaust may be excused where the administrative remedies are rendered "unavailable," with the plaintiff bearing the burden of demonstrating that the grievance process was unavailable to him through no fault of his own. *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010); *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010); *Brown*, 422 F.3d at 939-40.

### IV.     **Plaintiff's Claims Against Defendants**[5]

The claims upon which Plaintiff is proceeding must be identified in order to properly assess whether he exhausted any inmate grievance ("602") that provided enough information to notify prison officials of the problem and take corrective action.

In the Second Amended Complaint, Plaintiff alleges that in July of 2009 he was housed on single-cell status in the D Facility of Kern Valley State Prison, due to a lack of compatible cell-mates because of his membership in the "Northern" gang. (Doc. 19, 2nd AC, p. 7.) Plaintiff alleges that, prior to July 16, 2009, all of the named Defendants knew that there had been a "30 to 40 year old 'war' and conflict between 'Northern' and 'Southern' Mexican gangs." (*Id*) Because of this, the named Defendants "knew or should have known that if [a Northern and a Southern gang member were] housed together or staged in a cell or dorm together, violence would immediately break-out and a 'mele' would ensue." (*Id.*)

On July 16, 2009, Plaintiff alleges that the named Defendants "illegally and unlawfully deliberately misclassified a 'Southern' Sereno gang member to be housed with the Plaintiff a 'Northern' so that they could stage a gladiator areana [sic] type fight between Plaintiff and a known 'enemy.'" (*Id.*, emphasis in the original.) Plaintiff alleges that Warden Lawless gave orders to Sgt. Finegan, who directed C.O.s Corona and Borbon to place the violent Southern inmate in the cell with Plaintiff. (*Id.*) Plaintiff alleges that when the Soreno gang member entered the cell, he immediately attacked Plaintiff, causing Plaintiff to sustain emotional distress and physical injuries to his face, back, and left hand ("the precipitating incident"). (*Id.*, at p. 8.)

---

[5] This is a rendition of the factual allegations upon which Plaintiff's claims against Defendant were found cognizable which are presented here for overview purposes only. Undisputed and disputed material facts are discussed where and if applicable in following sections.

5

## V. Analysis[6]

Defendants argue that Plaintiff failed to exhaust his claims in this action as he did not file an inmate appeal ("IA") within the requisite time frame after the precipitating incident and all of his subsequent attempts were screened out as untimely, or for Plaintiff's failure to comply with other applicable procedures. (Doc. 43-1, SMJ P&A, 3:19-4:4.)

Defendants submit evidence to show that Plaintiff filed seven IA after the precipitating incident which "related to it." (Doc. 43-3, Dec. Tallerico, ¶ 5.) Only one of which (IA # 11-00675) he pursued through to a Director's Level decision, but it complained of the handling of prior IAs Plaintiff filed on July 21, 2009, August 24, 2009, and September 20, 2010 regarding the precipitating incident, rather than the precipitating incident itself. (*Id.*; Doc. 43-4, Dec. Zamora, ¶¶ 8-9, Exh. 2B, pp. 63-65.) The other six IAs did not address the precipitating incident and were all rejected for various reasons before the first formal level of review. (Doc. 43-3, Dec. Tallerico, ¶¶ 5-13.)

In opposition, Plaintiff argues that he filed two IAs regarding the July 16th incident -- one on July 21, 2009 ("July 21st IA") regarding the precipitating incident and one on August 24, 2009 ("August 24th IA") regarding the 115 disciplinary hearing that followed the precipitating incident. (Doc. 46, p. 2.) Plaintiff argues that it was the loss of the July 21st IA and his inability to obtain documentation to support the August 24th IA that caused processing complications. (*Id.*) Plaintiff argues that in 2009 and 2010, there was no means to insure or prove that an IA submitted by an inmate was received by the appeals office and no way to prove attempts of requesting interviews or documentation requests by inmates to support a given IA. (*Id.*) Plaintiff states that the August 24th IA was rejected and resubmitted a number of times before ultimately being rejected for untimeliness. (*Id.*) Plaintiff also argues that he did not receive a response from prison staff to his July 21st IA and that he did not receive clear instructions as to how to pursue

---

[6] The Court has reviewed the Second Amended Complaint, the motion for summary judgment, the opposition, and the reply, but declines to exhaustively list every argument presented, every fact recited, and every piece of evidence submitted by the parties. Omission in this order of reference to various arguments, facts, or evidence should not be interpreted by the parties as an indication that the Court overlooked that argument, fact, or piece of evidence, but rather that they were not pivotal to the issues raised in this motion.

1 his IAs, he was unaware how to handle IAs that had not been responded to, and was under the
2 impression that he could only challenge IAs that had been processed and responded to. (*Id.*) This
3 was Plaintiff's understanding until September of 2010 when another inmate advised him to
4 "refile" regarding his July 21st IA, which he did via an IA on September 20, 2010 (restating the
5 problem he identified in the July 21st IA) which was rejected and ultimately cancelled. (*Id.*)

6       To support his arguments, Plaintiff submits a declaration stating that he filed the July 21st
7 IA regarding being wrongfully assigned to cell with a known gang enemy. Doc. 46, pp. 20-22,
8 Doc. 52, p. 22.) Plaintiff's declaration also states that he waited for a response to his July 21st IA
9 which he never received. (*Id.*) Plaintiff's assertion that he submitted the July 21st IA which was
10 never responded is supported by his own declaration as well as documentary evidence submitted
11 by both Plaintiff and Defendants that shows Plaintiff submitted multiple IAs attempting to
12 ascertain the status, tracking number, and/or end result of his July 21st IA among others. (*See*
13 Doc. 43-3, pp 3, 9-11, 13-24, 28-30; Doc. 43-4, pp. 8-9, 13-31, 64-65; Doc 46, pp. 23-34, 41-43,
14 47-50.)

15       Plaintiff's evidence also supports his assertion that he did not know how to handle an IA
16 that prison staff did not respond to until another inmate told him to "refile" on the outstanding
17 issue in September of 2010 as it shows an IA that Plaintiff submitted on September 20, 2010
18 ("September 20th IA"). The September 20th IA identifies the problem as, "Problem is I haven't
19 received an first or 3rd informal level response from an 602 filed on '7-21-09' on a serious matter
20 regarding staff misconduct & CDCR failer (sic) to assign I/M in correct housing cells #
21 Title.15.3269(A) which lead me to an CDC # Disciplinary 115 write up serious rule violation (in
22 cell) I/M battery S.B.I. caused by CDCR staff escorts … incident log:FD3-09-07-0345, Date: 7-
23 16-09 KVSP D-Yard, 3 Bld, Cell #226. . . ." (Doc. 46, p. 23.) Plaintiff declares that the
24 September 20th IA essentially restated the problem that he raised in the July 21st IA and that he
25 filed the September 20th IA when he was advised to do so by another inmate since his July 21st
26 IA was important and prison staff had not responded to it. (Doc. 46, p. 21.)

27       The September 20th IA both describes the situation that is in issue in this action
28 sufficiently to show that the substance of Plaintiff's July 21st IA would have been sufficient to

1 place prison officials on notice of the issues in this action and that prison staff failed to respond to
2 it.

3       "[A] remedy becomes unavailable if prison employees do not respond to a properly filed
4 grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*
5 *v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (internal quotations and citations omitted) cited
6 with approval in *Sapp*, 623 F.3d at 822.  Other Circuit Courts have reached similar holdings.  *See*
7 *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (Courts are "obligated to
8 ensure any defects in exhaustion were not procured from the action of inaction of prison
9 officials."); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("Prison officials may not take
10 unfair advantage of the exhaustion requirement, [ ] and a remedy becomes 'unavailable' if prison
11 employees do not respond to a properly filed grievance or otherwise use affirmative misconduct
12 to prevent a prisoner from exhausting." (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.
13 2006))); *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) (administrative
14 remedies are exhausted when prison officials fail to timely respond to properly filed grievance);
15 *Abney v. McGinnis*, 380 F.3d 663, 667 (2nd Cir. 2004) (inability to utilize inmate appeals process
16 due to prison officials' conduct or the failure of prison officials to timely advance appeal may
17 justify failure to exhaust); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (the failure
18 to respond to a grievance within the policy time limits renders remedy unavailable); *Lewis v.*
19 *Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials fail to respond, the remedy
20 becomes unavailable, and exhaustion occurs); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir.
21 2001) (district court did not err when it declined to dismiss claim for failure to exhaust where
22 prison failed to respond to grievance); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (when a
23 valid grievance has been filed and the state's time for responding has expired, the remedies are
24 deemed exhausted).

25       Defendants' evidence notes that there is no record that Plaintiff filed an IA on July 21,
26 2009.  (Doc. 43-3, p. 4.)  However, Defendants' evidence shows that, before 2011, IAs at the
27 informal level and those that were rejected were not given a log number or formally tracked; nor
28 were copies of the appeals or rejection forms kept, but that they are able to access "*some*

information concerning rejected appeals from [their] computer system." (*See* Doc. 43-3, p. 3 (emphasis added).) Thus, Defendants' evidence does not definitively show that Plaintiff did not submit an IA on July 21, 2009 that was lost, mishandled, or otherwise misplaced by prison staff. Such a gap in evidence during a time that is critical in this case, does not meet Defendants' burden.

Further, Plaintiff's evidence shows that he was not aware that he could pursue an IA that had not been responded to by prison staff as occurred with the July 21st IA. (Doc. 46, pp. 2, 20-21; Doc. 52, p. 22.) However, Defendants' evidence does not show that Plaintiff was provided with information as to what he should do to pursue an IA that he filed for which he did not receive a response which is "pertinent" to determine whether relief remained "available" to Plaintiff that he did not utilize. *See Brown*, 422 F.3d at 937.

Thus, drawing all inferences in the light most favorable to Plaintiff as required by *Comite de Jornaleros de Redondo* Beach, 657 F.3d at 942, it cannot be said that Defendants have met their burden of proof to show that Plaintiff had available administrative remedies that he failed to exhaust regarding the incident that occurred on July 16, 2009.

## VI. Conclusion and Recommendations

As set forth herein, Defendants Lawless, Finegan, Corona, and Borbon have not met their burden of showing Plaintiff failed to exhaust his available administrative remedies on his claims against them such that Defendants are not entitled to judgment as a matter of law at this time.

Accordingly, the Court HEREBY RECOMMENDS that Defendants Lawless, Finegan, Corona, and Borbon are not entitled to judgment as a matter of law and their Motion for Summary Judgment, filed May 9, 2014 (Doc. 43), should be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **30 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d

1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **November 5, 2014**             **/s/ Jennifer L. Thurston**
                                                                          UNITED STATES MAGISTRATE JUDGE