# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES PABLO PATTERSON,<br><br>        Plaintiff,<br><br>    v.<br><br>WARDEN, et al<br><br>        Defendants. | Case No. 1:12-cv-01948-DAD-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATION FOR PLAINTIFF TO PROCEED ON CLAS UNDER THE EIGHTH AMENDMENT AGAINST DEFENDANT OFFICERS S. CORONA AND R. BORBON AND TO DISMISS ALL OTHER CLAS AND DEFENDANTS**<br><br>**(Doc. 92)** |

**I.    Background**

    Plaintiff has proceeded in this action on his clas in the Second Amended Complaint ("SAC") for violation of the Eighth Amendment. He asserts this cla against Defendants Warden C. Lawless, Officer S. Corona, Officer R. Borbon, and Sergeant Finegan. His clas are based on a violent altercation incident when an enemy gang member was placed in his cell which resulted in. (Docs. 19, 21.) After various motions and discovery, Plaintiff has lodged a third amended complaint ("TAC") (Doc. 92) upon which he seeks to proceed (Doc. 91).

    **A.    Screening Requirement**

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portions of it if it raises clas that are legally frivolous or malicious, that fail to state a cla upon which relief may be granted, or that seek monetary relief

from a defendant who is mune from such relief.  28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Summary of the Third Amended Complaint

Plaintiff clas the acts at issuet occurred while he was an inmate at Kern Valley State Prison ("KVSP").  In the TAC, Plaintiff names the following Defendants:  Warden Kelly Harrington, and Correctional Officers M. Jeffreys, J. Delgadillo, J. Hart, and A. Fernandez as well as Sergeant Finegan, and Officers S. Corona and R. Borbon who were also previously named in the SAC.  Notably, Plaintiff omitted Warden C. Lawless from the TAC.  Plaintiff seeks monetary and injunctive relief.

Plaintiff alleges that in April 2009, he was transferred to KVSP where there has been a longstanding and well-known "war" between the Northern and Southern Hispanic gangs.  (Doc. 92, TAC, p. 3.)  Prison officials classified Plaintiff as a "Northern" gang affiliate and he confirmed this when he was interviewed in KVSP's Receiving and Release department.  (*Id.*)  After this interview, prison officials told Plaintiff that all Mexican inmates were locked down.  (*Id.*)  Officers escorted Plaintiff to Building 3 on D-yard.  (*Id.*)  Plaintiff was thereafter escorted to cell 226 by an unnamed "heavy set Mexican officer about 50 years of age" who asked about Plaintiff's gang affiliation.  Plaintiff reported that was a Northerner.  (*Id.*)  The officer asked if Plaintiff was okay celling up with other Northerners and Plaintiff agreed.  (*Id.*)

Plaintiff alleges that in 2007, a Northerner was killed by Southerner gang affiliates at KVSP and that later that same year, a Southerner affiliate was killed by Northerners.  He asserts further that tensions had remained high since that te.  In early July 2009, all Northerners were put on notice to be ready and alert as officers had been overheard planning to open certain cell doors "during building package call."  (Doc. 92, TAC, p. 3.)

On July 16, 2009, Plaintiff alleges that Defendant Sergeant Marta was the housing supervisor at Receiving and Release and that she misclassified inmate Robles and decided that he would be celled with Plaintiff.  (Doc. 92, TAC, p. 3.)  That same date, Defendant Officers Hart and Fernandez escorted Robles to Building 3 where they left h in the care of Defendant Officers

1  S. Corona and R. Borbon.  (*Id.*, p. 4.)  Plaintiff alleges that Defendant Officers S. Corona and R.
2  Borbon escorted Robles to Plaintiff's cell.  (*Id.*)  Defendant Officer Delgadillo, positioned as the
3  control booth operator, opened the door to Plaintiff's cell and advised Plaintiff that he was getting
4  a cellmate.  (*Id.*)  Plaintiff heard an inmate talking to Robles as he approached Plaintiff's cell
5  door.  The inmate told Robles to "be on his toes" when he learned Robles was going to be celled
6  with Plaintiff.  (*Id.*)

7  Defendant Officers S. Corona and R. Borbon were behind Robles as he entered the cell.
8  Plaintiff assisted  Robles with his property.  (Doc. 92, TAC, p. 4.)  Plaintiff turned to lowe4r the
9  volume on his TV as the officers closed the cell door and Plaintiff heard one of these two officers
10 say "good luck."  (*Id.*)  Plaintiff introduced himself to Robles who asked shakily if Plaintiff was a
11 "Norteno" to which Plaintiff replied "yes."  (*Id.*)   Robles immediately punched Plaintiff in the
12 eye and a fight ensued.  (*Id.*)  Once Plaintiff was able to knock Robles unconscious, he began
13 hitting and then kicking on the cell door and calling "mandown" which Officer Delgadillo
14 ignored for approximately two minutes.  (*Id.*)

15 Officer Delgadillo eventually opened the control booth window and asked what Plaintiff
16 wanted, to which Plaintiff responded "mandown."  (Doc. 92, TAC, p. 4.)  Plaintiff thereafter lay
17 on his bunk in pain and Defendant Officers S. Corona and R. Borbon returned, hit the alarm for a
18 cell fight, and ordered Plaintiff to the floor.  (Doc. 92, TAC, p. 4.)  After this, Plaintiff was taken
19 downstairs where a tall white officer questioned Plaintiff about his gang affiliation, to which
20 Plaintiff replied "Northerner."  (*Id.*)  Defendant Officer Delgadillo then mentioned to floor staff
21 that Robles is a "Southerner."  (*Id.*)  Thereafter Defendant Officer Fernandez escorted Plaintiff to
22 the program office and, along the way, asked why he didn't kill Robles to which Plaintiff did not
23 respond.  (*Id.*)  After medical evaluation, Defendant Sergeant Finegan spoke with Plaintiff
24 regarding the incident, apologized for the mix-up, and commented that, "stuff like this happens."
25 (*Id.*)

26 Thereafter, Defendant Lieutenant M. Jeffreys prepared a report on the incident in which
27 Defendant Officer S. Corona replied that he assumed the housing supervisors had completed the
28

"15Y inmate transfer record" and that he did not ask Robles about his affiliation prior to housing him with Plaintiff. (Doc. 92, TAC, p. 4.) As a result of the incident, Plaintiff was assessed a 24 month SHU-term and lost 360 day credits as a result of this incident.[1] (*Id.*, at p. 5.)

Plaintiff alleges that each of the Defendants breached their duty to ensure his safety. Plaintiff alleges that all of the Defendants were aware of the longstanding conflict between the Northern and Southern Hispanic gangs, but that Defendant Warden Kelly Harrington failed to enforce reasonable policy security measures and/or steps to prevent circumstances such as this from happening. (Doc. 92, TAC, p. 5.) He claims that Defendant J. Delgadillo knew or should have known that Plaintiff was at risk. He claims Delgadillo failed to stop the assault and failed to promptly open the cell door and allow Plaintiff to exit (*Id.*, at p. 5-6.). He claims that that Defendant Sergeant Marta failed to use reasonable care when overseeing the classification and assignment of Robles to Plaintiff's cell, that he failed to stop the assault, and failed to take measures to assure inmates were housed appropriately. (*Id.*, at p. 6.)  He alleges that Defendants Hart and Fernandez failed to notice the misclassification and to use reasonable care to ensure Plaintiff's safety and acted without adequate regard for the inmates' security and safety. (*Id.*) He claims that Defendant M. Jeffreys failed to use reasonable care for Plaintiff's safety by overseeing staff security measures and ensuring proper procedures were followed that would "familiarize staff with awareness and incident cautions" and that they did not enforce policies to prevent such incidents. He claims this constitutes inadequate supervision of security measures. (*Id.*, at pp. 6, 7) He claims that Defendant Sergeant Finegan failed to provide security supervision and to enforce proper security measures that would prevent proper housing of inmates. He asserts that Finegan

---

[1] Where the plaintiff's success on a § 1983 action would necessarily imply the invalidity of his underlying conviction or sentence, he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id.* at 488. This "favorable termination" requirement has been extended to actions under § 1983 that, if successful, would imply the invalidity of prison administrative decisions which result in a forfeiture of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 643–647 (1997). However, this action is not barred by *Heck* and/or *Edwards* since a finding in Plaintiff's favor would not necessarily imply the invalidity of the conviction or sentence imposed as a result of his altercation with IM Robles. Rather, Plaintiff is challenging the events that resulted in placing waring gang member, IM Robles, in his cell which led to the altercation.

1 should have checked, or had his floor escorts check, inmate case factors to ensure inmates are
2 housed appropriately. (*Id.*, at p. 7) Finally, he asserts that Defendants S. Corona and R. Borbon
3 failed to use reasonable care in housing Robles with Plaintiff. He claims they knew the inmates
4 were likely to fight and, when they started fighting immediately, they failed to intervene. (*Id.*).

5 Plaintiff seeks to have the Court issue declaratory judgment, and that he receive physical
6 therapy and other follow-up medical treatment, expungement of the disciplinary conviction from
7 Plaintiff's record, and monetary damages.

8 **C.     Eighth Amendment – Safety**

9 "The treatment a prisoner receives in prison and the conditions under which he is confined
10 are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832,
11 114 S.Ct. 1970 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials have
12 a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted
13 to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155,
14 1160 (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir.
15 2005)). To establish a violation of this duty, the prisoner must "show that the officials acted with
16 deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, at 1160 (citing
17 *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). This involves both objective
18 and subjective components.

19 First, the alleged deprivation must objectively be "sufficiently serious" and where the
20 plaintiff alleges a failure to prevent harm, "the inmate must show that he is incarcerated under
21 conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, quoting *Rhodes v.*
22 *Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392 (1981). Second, the prison official must
23 subjectively "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837;
24 *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). A prison official must "be
25 aware of facts from which the inference could be drawn that a substantial risk of serious harm
26 exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837. Liability may follow
27 only if a prison official "knows that inmates face a substantial risk of serious harm and disregards
28

5

that risk by failing to take reasonable measures to abate it." *Id*. at 847.  Further, the Supreme Court has stated that a remedy for unsafe conditions need not await a tragic event; rather, it is sufficient if the risk "is contrary to current standards of decency for anyone to be so exposed against his will, and that prison officials are deliberately indifferent to his plight." *Helling*, 509 U.S. at 33-35.

Plaintiff's allegations between the SAC and TAC have changed.[2]  First and foremost, in the TAC, Plaintiff no longer names Warden C. Lawless as a defendant, so he is properly dismissed.  Another important difference in the TAC, is that Plaintiff now alleges that most of the Defendants "failed to take reasonable measures," "failed to take reasonable steps," or were "negligent" in performing their duties to ensure that inmates were appropriately housed.  Acts of negligence[3] are insufficient to state cognizable claims under the Eighth Amendment where a Defendant must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," . . . "must also draw the inference," and "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 837, 847.

The only Defendants whom Plaintiff states cognizable claims under the Eighth Amendment against are Officers S. Corona and R. Borbon for failing to intervene despite hearing and knowing that Plaintiff and Robles were fighting immediately after the cell door closed and having necessarily heard another inmate advise Robles to "be on his toes" when he entered

---

[2] In the SAC, Plaintiff alleged that: in July of 2009 he was housed on single-cell status in the D Facility of Kern Valley State Prison, due to a lack of compatible cell-mates because of his membership in the "Northern" gang (Doc. 19, 2nd AC, p. 7); Defendants Warden C. Lawless, Sergeant Finegan, and Officers S. Corona and R. Borbon knew that there had been a "30 to 40 year old 'war' and conflict between 'Northern' and 'Southern' Mexican gangs" (id); because of this, these four Defendants "knew or should have known that if [a Northern and a Southern gang member were] housed together or staged in a cell or dorm together, violence would immediately break-out and a 'mele' would ensue" (id.); on July 16, 2009, these four Defendants deliberately misclassified a "Southern" gang member to be housed with Plaintiff so as to cause the Southern gang member and Plaintiff to fight/harm each other; Defendant Warden C. Lawless gave these orders to Defendant Sgt. Finegan, who directed Defendants Officers S. Corona and R. Borbon to place the "Southern" gang member with Plaintiff – which they did (id., at p. 8).  An altercation immediately ensued.  (*Id*.)  These allegations stated cognizable claims for deliberate indifference to Plaintiff's safety against Defendants Warden C. Lawless, Sergeant Finegan, and Officers S. Corona and R. Borbon.

[3] As in the SAC, Plaintiff did not state allegations in the TAC to show his compliance with the California Tort Claims Act ("CTCA") via presentation of a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. *See* Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  Thus, he may not proceed on a negligence claim under California law in this action.

6

Plaintiff's cell.

Plaintiff's allegations against all of the other Defendants simply fail to show that they specifically knew that Plaintiff was a Northerner and Robles was a Southerner to have disregarded an excessive risk to inmate health or safety by allowing them to be celled together. *Farmer*, 511 U.S. at 837. Thus, the TAC, states cognizable claims against Defendants S. Corona and R. Borbon only. In this regard, Plaintiff alleges they heard the other inmate tell Robles to "be on his toes" when he learned Robles would be celled with Plaintiff. He claims they failed to take reasonable measures to abate the danger (such inquiring as to their compatibility after hearing the other inmate's comment) and failed to intervene when Plaintiff and Robles started fighting immediately while they were close enough to hear the altercation.

**2. Supervisory Liability**

Plaintiff makes a number of allegations that sound in supervisory liability. He claims that Defendant Warden Kelly Harrington failed to enforce reasonable policy security measures and/or steps to prevent circumstances such as this from happening. (Doc. 92, p. 5) Also, he claims that Defendant Sergeant Marta failed to use reasonable care in overseeing the classification and housing assignment of Robles, that he failed to abate the assault, and failed to take measures to assure inmates were housed appropriately. (*Id.*, at p. 6). He asserts that Defendant M. Jeffreys failed to use reasonable care to ensure Plaintiff's safety by overseeing staff security measures, failed to ensure proper procedures were followed to "familiarize staff with awareness and incident cautions," and failed to enforce policies to prevent such incidents. He claims this constitutes inadequate supervision of security measures. (*Id.*, at pp. 6, 7) Finally, he claims and that Defendant Sergeant Finegan failed to provide security supervision, failed to enforce proper security measures to prevent improper housing of incompatible inmates and failed to require his floor escorts check inmate case factors to ensure they were housed appropriately (*id.*, at p. 7).

As stated in the prior screening order, to state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege facts that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights, knew of the

violations and failed to act to prevent them, or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and was 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

A plaintiff cannot prove an unconstitutional policy based upon a single incident "unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Rather, a single incident supplies a "policy" only when the decision-maker has "final authority" such that through his act, the incident establishes the policy in question. *Collins v. City of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988), citing *Pembauer v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292 (1986). Plaintiff fails to state any allegations which imply an unconstitutional policy caused an enemy gang member to be placed in his cell; rather, he alleges that various of the Defendants failed to follow proper policies and procedures to prevent such incidents from occurring.

As discussed above, Plaintiff's allegations state a cognizable claim for deliberate indifference under the Eighth Amendment against Defendant Officers S. Corona and R. Borbon based on their personal participation in acts that allegedly caused a deprivation of his rights. However, Plaintiff alleges no fact to show promulgation or implementation of a policy that was itself the moving force of constitutional violation. Thus, Plaintiff fails to state a cognizable claim for supervisory liability against any of the named Defendants. These claims should be dismissed.

## II. CONCLUSION

Plaintiff's Third Amended Complaint states a cognizable claim for deliberate indifference to Plaintiff's safety under the Eighth Amendment against Defendant Officers S. Corona and R. Borbon. All other claims and all other defendants should be dismissed. Because this case is over three years old and Plaintiff has had ample opportunity to conduct discovery toward supporting his Third Amended Complaint, the Court concludes that the deficiencies in Plaintiff's pleading noted above appear not capable of being cured through amendment which would make subsequent leave to amend futile. *Akhtar v. Mesa*, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

Accordingly, the Court RECOMMENDS that:

1. This action proceed on Plaintiff's Third Amended Complaint, filed December 17, 2015 (Doc. 92), only on Plaintiff's claims against Defendant Officers S. Corona and R. Borbon for deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment; and

2. All other Defendants and claims be dismissed with prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 30 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 25, 2016**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE