1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| JAMES PABLO PATTERSON,<br><br>                 Plaintiff,<br><br>        v.<br><br>WARDEN, et al<br><br>                 Defendants. | **Case No.  1:12-cv-01948-DAD-JLT (PC)**<br><br>**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMMARY JUDGMENT**<br><br>**(Doc. 103)**<br><br>**OBJECTIONS DUE WITHIN 21 DAYS** |

16      Plaintiff claims that the defendants knowingly placed an enemy gang member in his cell

17  and thereafter failed to intervene when a violent altercation occurred.  Because the Court

18  determines that there is no evidence the defendants were aware of the risk of harm, the Court

19  recommends the motion for summary judgment[1] be **GRANTED.**

20  **I.      Plaintiff's Claims**

21      Plaintiff alleged that in April 2009, while in the custody of the California Department of

22  Corrections and Rehabilitation, he was transferred to Kern Valley State Prison ("KVSP") where

23  there has been a longstanding and well-known "war" between the Northern and Southern

24  Hispanic gangs.  (Doc. 92, TAC, p. 3.)  Plaintiff is a Northerner and had only been celled with

25

---

26  [1] Plaintiff was provided with timely notice of the requirements for opposing a motion for summary judgment by the
court in an order filed on June 20, 2016.  *Woods v. Carey*, Nos. 09-15548, 09-16113, 2012 WL 262 6912 (9th Cir.
27  Jul. 6, 2012), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), and
*Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

28

1     Northerners previously.  (*Id.*)

2          On July 16, 2009, inmate Robles, a Southerner, was to be celled with Plaintiff.  (*Id.*)  On

3 that date, two officers escorted Robles to Building 3 where they left him with Officers S. Corona

4 and R. Borbon.  (*Id.*, p. 4.)  Plaintiff alleges that Corona and Borbon escorted Robles to Plaintiff's

5 cell.  (*Id.*)  Another officer, positioned as booth door control, opened the door to Plaintiff's cell

6 and advised Plaintiff that he was getting a cellmate.  (*Id.*)  Plaintiff heard an inmate talking to

7 Robles as he approached Plaintiff's cell door.  The other inmate asked Robles his cell number and

8 advised Robles to "be on his toes" when Robles told him he was going to cell number 226.  (*Id.*)

9          Corona and Borbon were behind Robles as he entered the cell with Plaintiff.  (*Id.*)

10 Plaintiff turned to turn down his TV as the officers closed the cell door and helped Robles with

11 his property.  (*Id.*)  Plaintiff introduced himself to Robles who asked shakily if Plaintiff was a

12 "Norteno" to which Plaintiff replied "yes."  (*Id.*)  Robles immediately punched Plaintiff in the

13 face and a fight ensued.  (*Id.*)  Once Plaintiff was able to knock Robles unconscious, he hit and

14 kicked on the cell door and called "mandown."  (*Id.*)  Plaintiff thereafter laid on his bunk in pain

15 and Corona and Borbon returned, hit the alarm for a cell fight, and ordered Plaintiff to the floor.

16 (*Id.*)

17 **II.**    **<u>Summary Judgment Standard</u>**

18          Summary judgment is appropriate where there is "no genuine dispute as to any material

19 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington*

20 *Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there

21 is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is

22 material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty*

23 *Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436

24 (9th Cir. 1987).  The Court determines only whether there is a genuine issue for trial and in doing

25 so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *Thomas v. Ponder*,

26 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

27          In addition, Rule 56 allows a court to grant summary adjudication, or partial summary

28

1   judgment, when there is no genuine issue of material fact as to a particular claim or portion of that

2   claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir.

3   1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final

4   determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The

5   standards that apply on a motion for summary judgment and a motion for summary adjudication

6   are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200

7   (S.D. Cal. 1998).

8          Each party's position must be supported by (1) citing to particular parts of materials in the

9   record, including but not limited to depositions, documents, declarations, or discovery; or (2)

10  showing that the materials cited do not establish the presence or absence of a genuine dispute or

11  that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P.

12  56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not

13  cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San*

14  *Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo*

15  *County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

16         Defendants do not bear the burden of proof at trial and, in moving for summary judgment,

17  they need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp.*

18  *Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S.

19  317, 323 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to

20  designate specific facts demonstrating the existence of genuine issues for trial."  *In re Oracle*

21  *Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323).  This requires Plaintiff to "show

22  more than the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby,*

23  *Inc.*, 477 U.S. 242, 252 (1986)).  An issue of fact is genuine only if there is sufficient evidence for

24  a reasonable fact finder to find for the non-moving party, while a fact is material if it "might

25  affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248; *Wool v.*

26  *Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

27         In judging the evidence at the summary judgment stage, the Court may not make

28

1    credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.,* 509

2    F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

3    inferences in the light most favorable to the nonmoving party and determine whether a genuine

4    issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v.*

5    *City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted),

6    *cert. denied*, 132 S.Ct. 1566 (2012).  Inferences, however, are not drawn out of the air; the

7    nonmoving party must produce a factual predicate from which the inference may reasonably be

8    drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

9    *aff'd*, 810 F.2d 898 (9th Cir. 1987).

10   **III.    Discussion and Analysis**

11          **A.    Legal Standard Under the Eighth Amendment**

12          "The treatment a prisoner receives in prison and the conditions under which he is confined

13   are subject to scrutiny under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832,

14   114 S.Ct. 1970 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  Prison officials have

15   a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted

16   to include a duty to protect prisoners."  *Labatad v. Corrections Corp. of America*, 714 F.3d 1155,

17   1160 (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir.

18   2005)).

19          To establish a violation of this duty, the prisoner must "show that the officials acted with

20   deliberate indifference to threat of serious harm or injury to an inmate."  *Labatad*, at 1160 (citing

21   *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).  This involves both objective

22   and subjective components.

23          First, objectively, the alleged deprivation must be "sufficiently serious" and where a

24   failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions

25   posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, quoting *Rhodes v. Chapman*,

26   452 U.S. 337, 349, 101 S.Ct. 2392 (1981).  Second, subjectively, the prison official must "know

27   of and disregard an excessive risk to inmate health or safety."  *Id.* at 837; *Anderson v. County of*

28

4

1    *Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).  A prison official must "be aware of facts from which

2    the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw

3    the inference." *Farmer*, 511 U.S. at 837.  Liability may follow only if a prison official "knows

4    that inmates face a substantial risk of serious harm and disregards that risk by failing to take

5    reasonable measures to abate it." *Id*. at 847.

6          **B.**       **Defendants' Undisputed Statements of Fact[2]**

7          Defendants' evidence shows that on July 16, 2009, Borbon and Corona were working as

8    floor officers on facility D at Kern Valley State Prison.  (DUF[3] 2.)  That day, inmates new to

9    KVSP were being brought to facility D from the receiving and release area by security and escort

10   officers.  (*Id*.)  The security and escort officers also brought a Transfer Record (CDCR 135) for

11   each new inmate.  (DUF 3.)  The Transfer Record specifies the inmate's name, CDCR number,

12   and the cell assignment.  (*Id*.)  Once the security and escort officers arrived at facility D with the

13   new inmates, the floor officers received the inmates and reviewed their Transfer Records.  (*Id*.)

14         Borbon and Corona received Robles from the security and escort officers.  (DUF 4.)

15   According to his Transfer Record, Robles was assigned to Facility D, Building 5, cell 226.  (*Id*.)

16   There was no other information on the transfer record.  (*Id*.)  Borbon and Corona escorted Robles

17   to cell 226 in Building 5, where Patterson was already housed.  (DUF 5.)  After Defendants

18   opened the cell door, Robles went inside and shook hands with Patterson.  (DUF 7.)  Patterson

19   began helping Robles with his property box.  (*Id*.)  The cell door was closed and locked, and

20   Defendants walked away.  (*Id*.)  Defendants did not hear any noise coming from the cell before or

21   after walking away.  (DUF 8.)

22         A few minutes later, the control booth operator advised Corona to go to cell 226 as there

23   was a man down.  (DUF 9.)  Corona called Borbon for help, and they went to cell 226 where they

24   saw Robles and Patterson face down on the floor.  (*Id*.)  Borbon activated his personal alarm and

25   the Defendants waited for responding staff to arrive and take control of the incident.  (DUF 10.)

26

27   [2] Disputes of fact shown by Plaintiff's evidence are delineated in the discussion of his opposition.

28   [3] "DUF" refers to Defendants' Statement of Undisputed Facts.

1    Patterson and Robles were pulled from the cell by responding staff and both inmates were placed

2    in handcuffs.  (DUF 11.)  Robles had significant injuries including bleeding, a laceration on his

3    forehead, scratches to his face, bruising to the back of his head, and a chipped tooth.  (*Id.*)

4    Patterson had scratches on his back and a blood blister on his left hand.  (*Id.*)  Patterson was taken

5    to administrative segregation and Robles was taken to an outside hospital for treatment of his

6    injuries.  (DUF 12.)  Patterson was issued a rule violation report ("RVR") for battery on an

7    inmate with serious bodily injury.  (DUF 13.)  A senior hearing officer later found Patterson

8    guilty and assessed a 360-day credit loss and a determinate security housing unit term.  (*Id.*)

9            **C.      Defendants' Motion**

10           Defendants argue that the above facts show Plaintiff cannot establish that either of them

11   acted with deliberate indifference to his safety by housing him with Robles.  (Doc. 103-1, p. 5.)

12   In support of his claim, Plaintiff asserts that he heard another inmate advised Robles to "be on his

13   toes" as Defendants brought Robles to the cell, but neither Defendant heard such a statement.

14   (*Id.*, citing DUF 6.)  Further, at his deposition, Plaintiff indicated that this statement was made in

15   Spanish.  Borbon does not speak Spanish so he could not subjectively be aware of any risk based

16   on this statement.  (*Id.*, citing DUF 14.)  Plaintiff also admitted that although he heard an inmate

17   on the tier talking to Robles and he "believe[d]" he heard the inmate say "stay on your toes," he

18   did not know to what the inmate was referring or whether it had anything to do with him.  (*Id.*,

19   citing DUF 6.)  Thus, this demonstrates that even if Corona heard the statement, it was not

20   obvious that the inmate was warning Robles about being celled with Plaintiff.  (*Id.*)  Defendants

21   argue that this shows Corona did not act with deliberate indifference to Plaintiff safety.  (*Id.*)

22           Defendants argue that neither of them heard nor saw Plaintiff's altercation with Robles to

23   have ignored it in deliberately indifference Plaintiff safety.  (*Id.*, citing DUF 8.)  According to

24   Plaintiff, when Robles arrived at his cell, Plaintiff helped with his property, the cell door was

25   closed, and Plaintiff excused himself to the other side of the cell to turn down his television.  (*Id.*,

26   citing DUF 7.)  Plaintiff claims that at this point Robles walked up to him, asked if he was a

27   Northerner and, when Plaintiff said he was, Robles punched him in the face causing him to trip

28

and hit his back on a stool in the back of the cell and become wedged between a table the bunk. (*Id.*)  It was thereafter that Plaintiff claims he got up and began fending off Robles.  (*Id.*, citing DUF 7.)  Defendants argue that, assuming these facts are true, it is not evident that either of them necessarily heard or saw the fight.  (*Id.*)  Defendants show that the cell doors in facility D, building 5 are solid except for a small opening for a food tray.  (*Id.*, citing DUF 15.)  Thus, once the door was shut Defendants could not see into the cell, nor could Plaintiff see where Defendants were.  (*Id.*)  Defendants assert that the solid doors also made it difficult for the Defendants to hear any sounds coming from inside the cell.  (*Id.*)  Defendants argue that, based on Plaintiff own account some period of time necessarily elapsed between the cell door closing and Robles hitting Plaintiff.  (*Id.*, pp. 5-6.)  Defendants further assert that even more time elapsed between Robles hitting Plaintiff, Plaintiff falling, and Plaintiff getting up to fight off Robles -- none of which could have happened so quickly that Borbon and Corona necessarily heard the fight.  (*Id.*)

Given these facts, the burden shifts to Plaintiff to establish that a genuine dispute exists as to any material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that the dispute exists.  Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973).

### D.      Plaintiff's Opposition

In his opposition, Plaintiff argues that Borbon and Corona withheld "additional documentation information that was included with transfer record 135."  (Doc. 107. Plaintiff's Disputed Facts ("PDF"), p.20, ¶3E.)  He asserts that Security and Escort Officers who are escorting inmate arrivals to housing units, bring with them a "base file containing a transfer record 135-154 among attachments of other classification information that notifys [sic] officers who the inmate is and gang affiliation."  (*Id.*, at ¶ 3A.)  Plaintiff asserts that this is critical security information that "follows that inmate throughout the facility where he moves" and is kept in a

1   secure office.  (*Id.*, at ¶ 3B.)  Plaintiff asserts that Corona never possessed, nor reviewed Robles'

2   file.  (*Id.*, at ¶ 3C.)  However, Plaintiff's only evidence to support these assertions is his own

3   declaration which he asserts "upon belief."  (Doc. 107, Exh. 12, pp. 99-100, P's Dec., ¶¶ 4-6.)

4   This does not show that Plaintiff has personal knowledge of these procedures or is otherwise

5   competent to testify about them.  28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4).  Plaintiff also asserts

6   that "the CDCR 135 Transfer Record does not specify" that Robles' housing assignment was

7   facility D, building 3, cell 226.  (Doc. 107, p. 20, PDF ¶3D.)  Though Plaintiff points to a

8   document attached as an exhibit to his opposition (Doc. 107, Exh. 9, p. 89), he fails to explain the

9   basis upon which he believes this document supports his conclusion and none is patently obvious.

10       Plaintiff disputes that Defendants received Robles from security and escort officers, that

11   according to his transfer record, Robles was assigned to facility D, building 5, cell 226 and that

12   there was no other information on the transfer record.  (Doc. 107, PDF, p. 20, ¶4.)  To this end,

13   Plaintiff asserts that the transfer record did not reflect that Robles was assigned to facility D,

14   building 5, cell 226.  (*Id.*)  Here again, Plaintiff does not explain the basis how the transfer record

15   supports for his conclusion and no such support is obvious on its face.

16       Plaintiff admits that, though he heard another inmate tell Robles to "be on his toes," he did

17   not know to what the inmate was referring or whether the comment had anything to do with him.

18   (Doc. 107, p. 20.)  Other than proximity, Plaintiff provides no basis upon which to find that

19   Borbon or Corona heard this statement, let alone understood it to be a warning that Plaintiff and

20   Robles were incompatible for housing.  Further, at his deposition, Plaintiff stated that the inmate

21   told Robles to "be on his toes" in Spanish.  (Doc. 107, p. 151.)  However, in his declarations,

22   Plaintiff indicates that this statement was spoken in English.  (Doc. 107, P's Dec. pp. 99, ¶9.)

23   Plaintiff's declaration statements do not override the statements he made in his deposition as "[a]

24   party cannot create a genuine issue of material fact to survive summary judgment by

25   contradicting his earlier version of the facts."  *Block v. City of Los Angeles*, 253 F.3d 410, 419, n.

26   2, (9th Cir. 2001) *ref. Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

27   Thus, the Court accepts Plaintiff's deposition testimony and not his contradictory declaration and

28

finds the statement was uttered in Spanish. Borbon neither speaks nor understands Spanish (*see* Doc. 103-3, Borbon Dec., ¶ 8). Moreover, the statement was ambiguous as even Plaintiff did not know to what it referred. Thus, Plaintiff fails to create a dispute of fact to show that near or immediately before the moment they placed Robles in Plaintiff's cell, Borbon and Corona were aware of safety concerns. Thus, the Court cannot find they were deliberately indifferent to Plaintiff's safety when they placed Robles in his cell.

Plaintiff next attempts to show that after placing Robles in Plaintiff's cell, Borbon and Corona were aware that they began fighting but ignored it and walked away. Plaintiff states that the door of his cell was three-to-four inches thick, had a thin window and food port, and had about a three-inch gap between the bottom of the door and the floor. (Doc. 107, p. 21, ¶8A, citing P's Dec., pp. 99-100, ¶21, IM Matthews Dec., p. 101, IM Reyes Dec, p. 102.) The doors are not sound-proof and it is approximately 60 feet from the door of the cell to the exit in the housing unit and stairs are located approximately 15 feet to the right of the cell door. (*Id.*, ¶ 1st 8B[4], citing P's Dec., at ¶22, IM Matthews Dec., p. 101, IM Reyes Dec, p. 102.) Plaintiff identifies the metal objects inside his cell and states that if there is a fight inside a cell, anyone outside the cell will hear it because the metal rattles when hit. (*Id.*, ¶ 2nd 8B, citing P's Dec., pp. 99-100, ¶23, IM Matthews Dec., p. 101, IM Reyes Dec, p. 102.) Based on this, Plaintiff asserts that Defendants Borbon and Cordona "had to hear" both the unidentified inmate tell Robles to be on his toes and their fight. Even with these facts about the location and characteristics of the cell accepted as true, Plaintiff does not dispute that he and Robles did not begin fighting until after Borbon and Corona walked away from cell 226. (Doc. 107, p. 21, ¶¶7, 7A.)

Indeed, Plaintiff does not dispute Defendants' Undisputed Fact #7 which states the following sequence of events after Defendants' arrived at cell 226 with Robles.

> After Defendants opened the cell door, Robles went inside and shook hands with Patterson. Patterson then began helping Robles with his property box. The cell door was closed and locked, and Defendants walked away. Patterson excused himself to the other side of the cell to turn down his television. Patterson claims that at this point Robles walked up to him, asked if he was a Northerner and, when Patterson said he was, Robles punched him in the face causing him to trip and hit his back on a stool in the back of the cell, becoming

---

[4] There are two paragraphs marked "8B" on page 21 of Plaintiff's opposition.

wedged between a table under a bunk.

(Doc. 103-3, DUF 7, citing Ex. 2, Decl. of S. Corona at ¶ 5; Ex. 3, Decl. of R. Borbon at ¶ 5; Ex. 1 Dep of Patterson at 9, 11-13.)  Plaintiff fails to provide any evidence of the location of the defendants when then fight began such that the Court can infer that they heard the altercation. Moreover, Plaintiff does not provide any evidence as to whether there was no sound coming from other cells or inmates in the area such that Defendants would definitively have heard the altercation while walking away from cell 226.

Thus, Plaintiff fails to show that Borbon and Corona were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," drew that inference and failed to take reasonable measures to abate it.  *Farmer*, 511 U.S. at 837, 847.  Given this, Defendants are entitled to summary judgment as Plaintiff fails to demonstrate "the existence of genuine issues for trial."  *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).  Defendants' request for qualified immunity need not be reached since they are entitled to summary judgment on the merits of Plaintiff's claim.

## IV.     Conclusions and Recommendations

As set forth herein, this Court finds that Defendants have met their burden and their motion for summary judgment should be granted.     Accordingly, the Court **RECOMMENDS**:

1.     That the Motion for Summary Judgment filed by Borbon and Corona (Doc. 103) should be **GRANTED**; and

2.     That the Clerk of the Court be directed to enter judgment against Plaintiff and for Defendants Borbon and Corona, and that this action be closed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within 21 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834,

1   839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

2

3   IT IS SO ORDERED.

4      Dated:   **September 8, 2016**                    **/s/ Jennifer L. Thurston**
                                                 UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28